# United States Court of Appeals for the Federal Circuit

_____

**CODA DEVELOPMENT S.R.O., CODA INNOVATIONS S.R.O., FRANTISEK HRABAL,**
*Plaintiffs-Appellants*

**v.**

**GOODYEAR TIRE & RUBBER COMPANY, ROBERT BENEDICT, ROBERT ALLEN LOSEY,**
*Defendants-Appellees*

_____

2018-1028

_____

Appeal from the United States District Court for the Northern District of Ohio in No. 5:15-cv-01572-SL, Judge Sara Lioi.

_____

Decided: February 22, 2019

_____

BOYD T. CLOERN, Steptoe & Johnson, LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by CHARLES GLASTON COLE; DAVID KWASNIEWSKI, San Francisco, CA.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for defendants-appellees. Also represented by JOHN CHARLES EVANS, CALVIN GRIFFITH, DAVID MICHAEL MAIORANA, Cleveland, OH.

_____

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit Judges.*

PROST, *Chief Judge.*

Plaintiffs-appellants CODA Development s.r.o., CODA Innovations s.r.o. (together, "Coda"), and Frantisek Hrabal (collectively, "Plaintiffs") filed a complaint against defendants-appellees The Goodyear Tire & Rubber Company ("Goodyear"), Robert Benedict, and Robert Losey (collectively, "Defendants") in the U.S. District Court for the Northern District of Ohio. The complaint sought correction of inventorship in several Goodyear patents and alleged, among other things, that Goodyear misappropriated Coda's trade secrets.

The district court dismissed the complaint for failing to state a claim upon which relief could be granted, and following the dismissal, it denied Plaintiffs leave to amend their complaint. Plaintiffs appeal the district court's dismissal and denial of leave to amend. We vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

BACKGROUND

I

The complaint alleges the following facts. Mr. Hrabal, Coda's CEO, invented certain self-inflating tire ("SIT") technology. In 2008, General Motors representatives approached Coda and expressed interest in the technology. General Motors wanted to involve Goodyear in commercializing the technology, and Coda consented to that arrangement. General Motors then wrote to Goodyear suggesting that it contact Coda, which it did. Goodyear requested and arranged a meeting with Coda, but before the meeting took place, the parties executed a nondisclosure agreement restricting use of disclosed information to cooperation

between the parties regarding the development of SIT technology.

Coda and Goodyear met for the first time on January 15, 2009, at a research facility near Frankfurt, Germany. Several Goodyear representatives participated in the meeting, including Mr. Benedict, who was responsible for Goodyear's research and development relating to SIT technology. At this meeting, and at Goodyear's request, Coda shared novel, proprietary, and confidential information concerning its SIT technology, including the placement of the tire's pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of the tire.[1] J.A. 55–56 ¶¶ 29, 31.

Some Goodyear representatives expressed skepticism about the viability of Coda's technology. Goodyear had been disappointed before; it previously invested in a failed inflating technology called the "Cycloid." Nevertheless, Coda addressed Goodyear's viability concerns at this meeting, and the parties agreed to continue discussions.

Goodyear contacted Coda requesting a second meeting. Mr. Benedict specifically requested to review an updated technical presentation, the latest product, testing methods, and performance results. J.A. 56–57 ¶ 34. This second meeting occurred in Prague on June 15, 2009, with Mr. Benedict and members of his team in attendance. At this meeting, Coda allowed Goodyear to examine a functional prototype of Coda's SIT technology. Mr. Benedict requested that he and his team be allowed to spend some time alone with the prototype, during which he photographed it without permission. J.A. 57 ¶ 36.

---

[1] Separately, the complaint notes that the pump tube is "preferably located in the tire sidewall." J.A. 53 ¶ 20.

Following the June 2009 Prague meeting, several months passed without any communication from Goodyear. Coda attempted to restart communications in November 2009, inviting Mr. Benedict to dinner to discuss the status of the proposed development project. Mr. Benedict declined, saying that "[a] meeting would be premature at this point." J.A. 58 ¶ 38 (alteration in original).

The following month, December 2009, a Goodyear employee on Mr. Benedict's team independently contacted Coda to inquire about the status of Coda's SIT technology in preparation for an internal Goodyear meeting. Coda explained that Mr. Benedict had surprisingly gone silent. The employee replied, saying that "during [Goodyear's] brainstorm session, I indicated your invention matches up nicely with Goodyear's current criteria for development and asked if we have looked into this with SIT Coda. [Mr. Benedict's] response to this question was oddly vague." J.A. 58 ¶ 40 (first alteration in original).

Also that month, and unbeknownst to Coda, Goodyear applied for a patent entitled "Self-Inflating Tire Assembly." Goodyear's application published on June 23, 2011, issued as U.S. Patent No. 8,042,586 (the "'586 patent") on October 25, 2011, and named Messrs. Benedict and Losey as the inventors.

Meanwhile, Coda assumed that Goodyear's silence indicated a lack of interest in Coda's SIT technology, or perhaps that the economic recession was inhibiting further discussions. But in September 2012, Coda received an unsolicited email from the (then ex-) Goodyear employee with whom Coda corresponded in December 2009. The email said, "I am retired now from Goodyear and see in the news today that they have copied your SIT. Unfortunate. I thought China companies were bad." J.A. 59 ¶ 44.

According to the complaint, between 2012 and 2015, eleven other patents issued to Goodyear covering assemblies and methods for assembly of pumps and other devices

used in self-inflating tires. The complaint alleges that these patents have claims with limitations covering the novel, proprietary, and confidential information Coda disclosed to Goodyear.

## II

Plaintiffs sued Defendants in the U.S. District Court for the Northern District of Ohio on August 9, 2015. The complaint included two correction-of-inventorship claims concerning the '586 patent—one to add Mr. Hrabal as an inventor, the other to remove Messrs. Benedict and Losey as inventors. The complaint also included correction-of-inventorship claims to add Mr. Hrabal as an inventor on eleven other Goodyear patents (the "Alleged Jointly Invented Patents")[2] and a claim of trade-secret misappropriation under Ohio state law.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants argued that for each of Plaintiffs' correction-of-inventorship claims, the complaint failed to plead facts supporting Mr. Hrabal's conception or co-conception of the inventions claimed in Goodyear's patents. Defendants referenced an exhibit to their motion—a patent application of Mr. Hrabal's published before the '586 patent's filing date—and argued that the complaint's description of Plaintiffs' novel, confidential technology was "so unspecific that it applie[d] equally" to this publication. J.A. 273. With respect to the Alleged Jointly Invented Patents, Defendants further argued that the complaint failed to plead facts supporting collaboration. Finally, Defendants argued that Plaintiffs' trade-secret-misappropriation claim was barred by the relevant

---

[2]   The Alleged Jointly Invented Patents are U.S. Patent Nos. 8,235,081; 8,322,036; 8,381,784; 8,550,137; 8,573,270; 8,695,661; 8,944,126; 8,857,484; 8,746,306; 8,381,785; and 8,113,254. J.A. 65–71.

Ohio statute of limitations because Coda should have known of its claim as of June 2011, when the application leading to the '586 patent published.

Plaintiffs opposed.  In reply, Defendants attached an article written by Mr. Hrabal that was published in November 2008 (the "Hrabal article").  J.A. 874–78.  Defendants argued that the Hrabal article publicly disclosed everything the complaint alleged was novel, proprietary, and confidential (and shared with Goodyear), including the placement of the tire's pump tube, the design of the pressure management system, the efficiency of the leakage compensation system, and the air passageway/interface between the exterior and interior of the tire.  J.A. 844–45.

Plaintiffs moved the district court to strike or disregard the Hrabal article because it was outside the pleadings and was offered for the first time on reply.  Alternatively, Plaintiffs requested leave to file a sur-reply addressing the new arguments based on the Hrabal article.  In their request for a sur-reply, Plaintiffs argued that while the Hrabal article disclosed a location for the tire's pump tube, that location was not the secret location disclosed to Goodyear.  Plaintiffs indicated that a sur-reply would fully explain why the Hrabal article did not disclose the alleged novelty and trade secrets that Coda disclosed to Goodyear.

Nine months after briefing on the motion to dismiss concluded, the district court issued an opinion and order denying Plaintiffs' motion to strike and granting Defendants' motion to dismiss. *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-cv-1572, 2016 WL 5463058 (N.D. Ohio Sept. 29, 2016) ("*Dismissal Opinion*").  The court denied Plaintiffs' motion to strike because it found the Hrabal article was judicially noticeable as a "2008 public disclosure of something [Plaintiffs] now claim[] was secret when disclosed to Goodyear in 2009." *Id.* at *2.  The court's opinion did not explain why it denied Plaintiffs' alternative request to file a sur-reply addressing the new article.

The district court then addressed Defendants' motion to dismiss. Beginning with Plaintiffs' correction-of-inventorship claims, the court set forth the alleged disclosures to Goodyear and found that Goodyear's '586 patent "actually identifies these very concepts as 'prior art,'" and that Mr. Hrabal's prior, published patent application disclosed a pump tube in a side wall. *Id.* at *4–5. But the bulk of the court's prior-art analysis rested on the Hrabal article. The court adopted Defendants' mapping of the article's contents to the complaint's description of the elements disclosed to Goodyear and concluded that the article publicly disclosed each of those elements. *Id.*[3] The court also concluded that the complaint did not plausibly show that Mr. Hrabal was the sole inventor of the subject matter claimed in the '586 patent or that he "contributed in any way, much less a novel way," to the Alleged Jointly Invented Patents. *See id.* at *5–6. Further, concerning the Alleged Jointly Invented Patents in particular, the court concluded that the complaint undermined the necessary showing of collaboration because it alleged that Goodyear stopped communicating with Coda after the Prague meeting. *Id.* at *5. On these bases, the court dismissed Plaintiffs' correction-of-inventorship claims.

The district court also dismissed Plaintiffs' trade-secret-misappropriation claim as time-barred under Ohio's four-year statute of limitations. *Id.* at *11; *see id.* at *9–10. The court found that the facts alleged in the complaint—including those concerning the two Goodyear meetings, the subsequent silence from Goodyear, and the independent contact from a Goodyear employee concerning Goodyear's internal meeting—"should have been sufficient notice to plaintiffs that something *might have* been amiss," thus

---

[3]    The court's mapping is not printed in the currently available Westlaw version of the *Dismissal Opinion*, but it can be found in the table at J.A. 25.

triggering a duty to investigate. *Id.* at \*10 (emphasis in original). According to the court, had Plaintiffs investigated, they would have discovered the application leading to the '586 patent at least as of its June 23, 2011 publication date—more than four years before the complaint's August 9, 2015 filing date. *Id.* The court therefore dismissed Plaintiffs' trade-secret-misappropriation claim.[4]

Plaintiffs moved the court to amend the judgment under Federal Rule of Civil Procedure 59(e) and also for leave to file an amended complaint.[5] The proposed amended complaint provided additional factual allegations regarding the SIT information disclosed to Goodyear, including the specific location of the tire's pump tube and how that location differed from the prior art. In this respect, the proposed amended complaint alleged that Mr. Hrabal "communicated to Goodyear the idea to put a tube *in a groove in*

---

[4] The district court dismissed all claims in the complaint, but Plaintiffs appeal the dismissal of only their correction-of-inventorship claims and trade-secret-misappropriation claim. Appellant's Br. 23–24, 28, 40; Oral Arg. at 1:03–20, No. 2018-1028, http://www.cafc.uscourts.gov/oral-argument-recordings ("Oral Arg.").

[5] The proposed amended complaint dropped many claims but added others. For example, it maintained correction-of-inventorship claims only with respect to the '586 patent and a subset of the Alleged Jointly Invented Patents, but it added a correction-of-inventorship claim with respect to U.S. Patent Nos. 8,826,955 and 8,851,132—neither of which was in the original complaint. Additionally, it maintained the trade-secret-misappropriation claim and added a declaratory-judgment claim regarding the parties' interests in certain patents and pending patent applications. It dropped all other claims that appeared in the original complaint.

*the bending region of the [tire's] sidewall.*" J.A. 137–38 ¶ 124 (emphasis added); J.A. 92 ¶ 15 ("Mr. Hrabal did not include this tube in the sidewall groove embodiment in any of his patent applications. . . . and this embodiment was not found in any prior art.").

Nearly a year after Plaintiffs filed their post-judgment motions, the district court denied them. *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-cv-1572, 2017 WL 4271874 (N.D. Ohio Sept. 26, 2017). The court acknowledged that the proposed amended complaint set forth Plaintiffs' correction-of-inventorship claims with "amazing clarity." *Id.* at *6. But, in the court's view, the factual details added in the proposed amended complaint—particularly the specific location of the pump tube—should have been in the original complaint. *Id.* at *5–6. Given this view, and Plaintiffs' decision not to request leave to amend before judgment, the court declined to allow Plaintiffs a "do over" on these claims. *Id.* at *7. The court separately rejected Plaintiffs' arguments concerning their trade-secret-misappropriation claim. *Id.* at *7–8.

Plaintiffs appeal the district court's dismissal of their original complaint and denial of their post-judgment request for leave to amend the complaint. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

We review a district court's dismissal for failure to state a claim under the regional circuit's law. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). The Sixth Circuit reviews such dismissals de novo, "construing the complaint in the light most favorable to the plaintiffs, accepting their well-pleaded factual allegations as true, and drawing all reasonable inferences in their favor." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 707 (6th Cir. 2015) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

We also review a district court's denial of a Rule 59(e) motion to amend a judgment and a motion to amend the complaint under the regional circuit's law. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1192 (Fed. Cir. 2014) (Rule 59(e) motion to amend a judgment); *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1380 (Fed. Cir. 2011) (motion to amend the complaint). The Sixth Circuit reviews denial of such motions for abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002).

Below, we first discuss the original complaint and the district court's dismissal, analyzing the correction-of-inventorship and trade-secret-misappropriation claims separately. We then address Plaintiffs' post-judgment motions.

## I

### A

Plaintiffs' complaint sets forth thirteen correction-of-inventorship claims under 35 U.S.C. § 256, which states:

(a) CORRECTION.—Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts

and such other requirements as may be imposed, issue a certificate correcting such error.

(b) PATENT VALID IF ERROR CORRECTED.—The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (2012). This section "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997).

Section 256 addresses two types of inventorship errors—misjoinder and nonjoinder. *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed. Cir. 1997). Misjoinder is the error of naming a person as an inventor who is not an inventor; nonjoinder is the error of omitting an inventor. *See id.* Through claims of misjoinder and nonjoinder together, § 256 "allows complete substitution of inventors."[6] *Id.* at 1556; *see id.* at 1553.

---

[6] Before the enactment of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, 125 Stat. 284 (2011), the first paragraph of § 256 stated: "Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent *and such error arose without any deceptive intention on his part . . . .*" 35 U.S.C. § 256 (2006) (emphasis added). We previously interpreted this language and held that "the statute allows correction in all misjoinder cases featuring an error and in those nonjoinder cases where the

"Conception is the touchstone of inventorship." *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001) (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994)); *accord Fina Oil*, 123 F.3d at 1473. As to joint inventorship, a joint inventor must contribute to the invention's conception. *E.g.*, *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358–59 (Fed. Cir. 2004); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460–61 (Fed. Cir. 1998); *Fina Oil*, 123 F.3d at 1473 ("[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention."). He or she need not "make the same type or amount of contribution" to the invention nor contribute to every claim—a contribution to one claim is enough. *Ethicon*, 135 F.3d at 1460 (quoting 35 U.S.C. § 116).

Further, with regard to joint inventorship, there must be "some quantum of collaboration." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("[T]here must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting."); *see Eli Lilly*, 376 F.3d at 1359 (referring to the inventors

---

unnamed inventor is free of deceptive intent." *Stark*, 119 F.3d at 1555; *see id.* at 1554. We note, however, that section 20(f) of the AIA removed the emphasized language from § 256. AIA sec. 20(f)(1)(B), 125 Stat. at 334. The updated version of § 256 applies to "proceedings commenced on or after" September 16, 2012. *Id.* sec. 20(l), 125 Stat. at 335. Plaintiffs filed their complaint on August 9, 2015, and therefore the updated version of § 256 applies to this proceeding.

having "some open line of communication during or in temporal proximity to their inventive efforts").

Accepting the complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, we conclude that Plaintiffs' claims for correction of inventorship are plausible. The complaint describes Goodyear's prior failures with inflation technology. It also describes two meetings with Goodyear representatives—both arranged at Goodyear's initiative and attended by Mr. Benedict, Goodyear's point-person on SIT technology. Goodyear sought technical information from Coda at both meetings. And in the second meeting, Mr. Benedict requested that he and his team be allowed to spend some time alone with Coda's functional prototype, during which he photographed it without permission. After this second meeting, Goodyear stopped communicating with Coda for a time. When Coda reached out to Mr. Benedict attempting to restart communications, Mr. Benedict responded that a meeting would be premature.

Yet the next month, in preparation for Goodyear's own internal meeting, a Goodyear employee independently contacted Coda to inquire about the status of Coda's SIT technology. Correspondence with that employee revealed that Mr. Benedict responded in an "oddly vague" way when asked whether Goodyear had looked into Coda's invention. Also that month, Goodyear applied for the first in a series of patents covering assemblies and methods concerning self-inflating tires, with claims covering the allegedly novel, proprietary, and confidential information Coda disclosed to Goodyear. Years later, after Coda deemed the Goodyear endeavor a bust, Coda received an unsolicited email from the former Goodyear employee, who said that Goodyear copied Coda's SIT technology.

Construing the complaint in the light most favorable to Plaintiffs and taking these and other highly specific facts together—including, but not limited to, Goodyear's prior

failure, its eagerness to meet with Coda, its unauthorized photography of Coda's functional prototype, the timing of its distancing itself from Coda and its filing for the '586 patent, and a pointed accusation from one of its former employees—we conclude that Plaintiffs' correction-of-inventorship claims are plausible. These facts allow the reasonable inference that Mr. Hrabal conceived the invention of the '586 patent and that Messrs. Benedict and Losey did not. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). They also allow the reasonable inference that Mr. Hrabal made a more-than-insignificant contribution to the conception of at least one claim of each of the Alleged Jointly Invented Patents. *Cf. Fina Oil*, 123 F.3d at 1473 ("The determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case."). Further, Coda's two meetings with Goodyear representatives, as well as the parties' signing a nondisclosure agreement going to cooperation between the parties in developing SIT technology, allow the reasonable inference that the collaboration requirement was satisfied as to the Alleged Jointly Invented Patents.

The "plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Rather, Plaintiffs need only "nudge[] their claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Under these circumstances, we conclude that Plaintiffs have done so as to their correction-of-inventorship claims.

The district court's contrary conclusion rested largely on a procedural error—namely, the consideration of material outside the pleadings. The principle is familiar:

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without

> resort to matters outside the pleadings. If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion.

*Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted); *see* Fed. R. Civ. P. 12(d) (stating similarly); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2018) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word 'must' [in Rule 12(d)] indicates that the judge must convert the motion to dismiss into one for summary judgment . . . . [T]hat is what has been done in a vast array of cases, especially when the district court actually considers the contents of this material in deciding the motion.").

The district court considered the Hrabal article without converting Defendants' motion into one for summary judgment and without giving Plaintiffs a reasonable opportunity to present all pertinent material. Defendants spend little time defending this procedure. They argue only that the district court properly relied on the Hrabal article without conversion because the article was judicially noticeable as a "public-record fact[]." Appellee's Br. 18. We are unpersuaded that the conversion rule was appropriately circumvented on this basis.

Although a district court may consider judicially noticeable matters outside the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment, *see Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), judicially noticeable facts must "not [be] subject to reasonable dispute," *see* Fed. R. Evid. 201(b). Here, the district court used the Hrabal article to "determine whether it was a 2008 public

disclosure of something Coda now claims was secret when disclosed to Goodyear in 2009." *Dismissal Opinion*, 2016 WL 5463058, at *2; *see* J.A. 24–25 (concluding that the article publicly disclosed each element of the alleged trade secrets). But whether the Hrabal article actually disclosed those alleged novel trade secrets was a reasonably (indeed, hotly) disputed factual issue—one outside any judicial-notice exception to the general rule requiring conversion, and one that should not have been resolved adversely to Plaintiffs on a motion to dismiss. The district court erred in considering the Hrabal article for this purpose without converting Defendants' motion to dismiss into one for summary judgment and giving Plaintiffs a reasonable opportunity to present all pertinent material.[7]

B

The district court also erred in dismissing Plaintiffs' trade-secret-misappropriation claim as time-barred.

An Ohio trade-secret-misappropriation claim must be brought "within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Ohio Rev. Code § 1333.66; *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 784–85 (N.D. Ohio 2005) (observing that this provision incorporates the "discovery rule"). Defendants' motion to dismiss argued that if Plaintiffs had been reasonably diligent, they

---

[7] We note further that, to the extent the district court relied on the '586 patent and Mr. Hrabal's prior, published patent application to determine that the alleged novel trade secrets were already in the prior art, *see Dismissal Opinion*, 2016 WL 5463058, at *5, such a determination was improper at this stage, for at least the reason that it constituted an inference adverse to Plaintiffs when there were other reasonable inferences to draw in their favor.

would have discovered the alleged trade-secret misappropriation by June 2011, when the application leading to the '586 patent published. J.A. 284–85. Defendants based their reasonable-diligence theory on Plaintiffs' activity in the SIT patent space and the purported ease of discovering new patents and patent applications "[w]ith today's technology." J.A. 284. The district court adopted a different theory—one to which Plaintiffs never had an opportunity to respond. The court found that the facts alleged in the complaint, including the independent contact from the Goodyear employee in 2009, "should have been sufficient notice to plaintiffs that something *might have* been amiss," thus triggering a duty to investigate. *Dismissal Opinion*, 2016 WL 5463058, at *10 (emphasis in original). The court found that such an investigation would have led to the discovery of the patent application when it published. *Id.*

The statute-of-limitations inquiry here is when Plaintiffs discovered or by the exercise of reasonable diligence should have discovered their claim. This inquiry is fact-specific. *See Adcor*, 411 F. Supp. 2d at 785–86 (citing Ohio law). Defendants ask us to infer, from the complaint itself, that Plaintiffs *should* have begun investigating in 2009 and that, had they done so, they *would* have discovered the application leading to the '586 patent as of its publication date eighteen months later. *See* Appellee's Br. 29–30, 33 (adopting the district court's theory). Defendants argue that the *only* reasonable inference to be drawn is against Plaintiffs. Appellee's Br. 30 (saying that Plaintiffs' allegations "lead inexorably to only one reasonable inference— that [Plaintiffs] had constructive notice of potential claims in 2009").

We disagree. Plaintiffs might have assumed Goodyear lost interest in the technology, given its previous failed investment. Or they might have thought that Goodyear would honor the nondisclosure agreement. *See, e.g., Allied Erecting & Dismantling Co.*, 805 F.3d at 707 (noting that

"all reasonable inferences" must be drawn in Plaintiffs' favor in reviewing a motion to dismiss).[8]

Regardless, these issues go more to the merits of Defendants' statute-of-limitations defense than the complaint's sufficiency. Indeed, because "[t]he statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim," a Rule 12(b)(6) motion, "which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citation omitted); *see Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

Considering only the complaint, and drawing all reasonable inferences in Plaintiffs' favor, we conclude that the district court erred in dismissing Plaintiffs' trade-secret-misappropriation claim as time-barred.

## II

We now turn to Plaintiffs' post-judgment motions. Although the district court found that the proposed amended complaint set forth Plaintiffs' correction-of-inventorship claims with "amazing clarity," it denied Plaintiffs leave to

---

[8]      We also reject, for similar reasons, Defendants' theories based on its characterization of Plaintiffs' activity in the SIT patent space and the purported ease of discovering new patents and patent applications. Both ask us to infer that Plaintiffs were looking for SIT patents (or should have been doing so) at a certain time and that they would have found the '586 patent application at the time it was published. But the complaint does not compel those inferences to the exclusion of reasonable inferences favorable to Plaintiffs.

amend their complaint. We find this result troubling, particularly given the previously described errors.

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Morse*, 290 F.3d at 799–800. The Federal Rules of Civil Procedure favor resolution of cases on their merits. *See Foman v. Davis*, 371 U.S. 178, 181–82 (1962); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (observing that Rule 15 in particular expresses this preference). The Supreme Court in *Foman* indicated that, in the absence of any apparent reason (e.g., undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, futility), leave to amend should be freely given, as Rule 15 requires. 371 U.S. at 182. While the post-judgment context introduces competing considerations, *Morse*, 290 F.3d at 800, our vacating the district court's dismissal should remove such considerations from the analysis.

At oral argument, Plaintiffs expressed their desire to proceed with their proposed amended complaint even if this court were to conclude, as it now has, that the original complaint sufficiently stated the claims on appeal. Oral Arg. at 7:40–52; *see id.* at 7:02–40 (describing how the number of claims in the proposed amended complaint has been pared down from the original complaint). We deem Plaintiffs' suggested approach sensible and are aware of no reason why they should not be permitted to file their proposed amended complaint on remand.[9]

---

[9] Aside from a potential futility argument, Defendants' counsel did not articulate any argument Defendants might have in opposition to the filing of the proposed amended complaint under these circumstances. Oral Arg. at 29:19–30:12.

CONCLUSION

For the foregoing reasons, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

Costs to Plaintiffs-appellants.