ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| J.A.M. Construction Services, Inc. | ) | ASBCA Nos. 63378, 64226, 64439 |
| | ) | |
| Under Contract No. N69450-16-D-0605, | ) | |
| T.O. N69450-20-F-1531 | ) | |

APPEARANCE FOR THE APPELLANT:    David Charitat, Esq.
  Widerman Malek, PL
  Melbourne, Florida

APPEARANCES FOR THE GOVERNMENT:    Allison M. McDade, Esq.
  Navy Chief Trial Attorney
  Billy B. Ruhling, II, Esq.
  Elizabeth C. Tosh, Esq.
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE STINSON ON GOVERNMENT'S MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND/OR MOTION TO STRIKE

Pending before the Board are two motions filed by the government seeking dismissal of portions of the three consolidated appeals filed by appellant J.A.M. Construction Services, Inc. (JAM):  (1) an April 24, 2025, partial motion to dismiss in ASBCA No. 63378 for failure to state a claim upon which relief can be granted and/or a motion to strike, and (2) a January 26, 2026, motion to dismiss JAM's recently-filed appeal, ASBCA No. 64439, also for failure to state a claim upon which relief can be granted.[1]  The government challenges the sufficiency of claims JAM submitted to the government pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, wherein JAM asserts government caused excusable delay as an excuse for challenging the government's termination of its contract for default and assessing JAM liquidated damages.  The government asserts that the Board lacks authority to review JAM's allegations of government-caused delay as an affirmative defense because JAM failed to comply with requirements of the CDA and the Federal Acquisition Regulation (FAR).

---

[1] Because this decision concerns two separately filed motions to dismiss, as well as corresponding responses by appellant, we include parenthetically the filing dates for those documents to distinguish between the various pleadings.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

Contract Award and Procedural Background

1.  These appeals arise under a Design-Bid-Build, Firm-Fixed Price, Indefinite Delivery/Indefinite Quantity, Multiple Award Construction Contract No. N69450-16-D-0605, between JAM and the Naval Facilities Command (NAVFAC) Southeast (R4, tab 1 at 1-2).  On March 6, 2020, NAVFAC Southeast issued JAM Task Order No. N69450-20-F-1531 (the "task order") under the contract, in the amount of $2,087,844, for construction of an elevator lobby addition to Building 2945 at Naval Air Station Whiting Field located near Milton, Florida (R4, tab 2 at 45-49).[2]  The task order performance period was 275 calendar days (*id.* at 5).

2.  On September 1, 2021, the government issued JAM a show cause notice (R4, tab 9), to which appellant's former counsel, Edward Kinberg, responded, proposing a no-cost termination for convenience and allowing the Navy "to keep the approximately $50,000 in retainage it has been holding" (R4, tab 10 at 83, 87).  JAM's response did not request a contracting officer's (CO) final decision (COFD) (R4, tab 10).  On November 19, 2021, JAM sent a second letter in response to the Navy's September 1, 2021, show cause notice, stating JAM's position that "it may be unrealistic to continue this project as a whole, to meet the schedule or to perform in accordance with JAM's estimated costs," and offering to enter a bilateral modification "addressing the time and cost issues" or, alternatively, requesting that "the contract be terminated for convenience with a termination for convenience being the most appropriate option" (R4, tab 11 at 89-90).  Again, JAM's response neither requested a COFD nor contained a CDA certification.

3.  By letter dated January 12, 2022, the government responded to JAM's September 9, 2021, and November 19, 2021, letters, stating that "no termination for convenience will be considered," and that a "cure notice will be issued shortly" (R4, tab 13 at 96).  On January 14, 2022, the CO issued a cure notice, to which JAM responded on January 21, 2022 (R4, tabs 15 at 100, 16 at 101-02).  The government issued a second show cause notice on March 24, 2022, to which JAM responded on March 31, 2022 (R4, tabs 17, 18 at 106-08).  The government terminated the contract and the task order for default on May 24, 2022 (R4, tab 19 at 145).

---

[2] Documents in the supplemental Rule 4 file are stamped "GOV" followed by Bates numbers beginning with zeros.  We cite to these Bates numbers, omitting "GOV" and the initial unnecessary zeros.

4. On August 10, 2022, JAM appealed the COFD dated May 24, 2022, which the Board docketed as ASBCA No. 63378. On September 26, 2022, JAM filed its complaint, asserting that the government's "hardline and unforgiving" review and processing of JAM's submittals delayed its completion of the contract task order (compl. dtd. September 26, 2022, ¶¶ 116 – 125), and that the Government failed to account for excusable delays to the critical path of the project (*id.* at ¶¶ 124 – 134). JAM sought conversion of the default termination to one for the convenience of the government (*id.* at ¶¶ 43, 134).

## April 1, 2025, COFD - Liquidated Damages

5. On February 28, 2025, the CO issued a demand for payment in the amount of $1,155,750 for liquidated damages calculated based upon the difference between the task order completion date of December 10, 2020, and the date of the CO's letter demand - a total of 1,541 days multiplied by the daily liquidated damages rate of $750 (R4, tab 28). The demand letter stated that "[t]he Government retains the right to reissue this demand for payment as part of a final decision pursuant to FAR 32.605 should payment not be made by the contractor within 30 days from the date of this letter" (*id.*). On April 1, 2025, the CO issued a COFD assessing liquidated damages as set forth in the CO's February 28, 2025, demand letter (R4, tab 29 at 24679).

## Government's First Motion to Dismiss and/or Strike – ASBCA No. 63378

6. On April 24, 2025 - over two and half years after JAM filed the appeal and just less than four months before an August 4, 2025, hearing was scheduled to commence - the government filed a partial motion to dismiss for failure to state a claim and/or motion to strike in ASBCA No. 63378, challenging that portion of JAM's appeal asserting government caused delay or excusable delay as an affirmative defense (gov't mot. at 1, 8-9 (April 24, 2025)). The government posited that JAM had not submitted to the CO a claim for government caused delay or excusable delay requesting a COFD (*id.* at 9).

7. On June 2, 2025, JAM filed its response in opposition to the government's motion (app. resp. at 1 of 6 (June 2, 2025)).[3] After discussions with the parties, the Board issued an Order dated July 30, 2025, holding in abeyance a decision on the government's April 24, 2025 motion, based upon appellant's statement that it would

---

[3] The pages of JAM's June 2, 2025, and March 6, 2026, responses to the government's April 24, 2025, and January 26, 2026, motions to dismiss are unnumbered. Citations to that filing are to the page numbers as designated by PDF reader.

soon submit a claim to the CO for a COFD which, presumably, would satisfy the issues presented in the government's motion.

### ASBCA No. 64226 – Liquidated Damages

8. On June 27, 2025, JAM appealed the April 1, 2025, COFD seeking liquidated damages, which the Board docketed as ASBCA No. 64226, and consolidated with ASBCA No. 63378.

### JAM Submission of "Formal Claim" Dated August 1, 2025

9. After much discussion between the parties and conference calls with the Board, appellant promised to submit to the CO additional claims and documents. On August 1, 2025, JAM submitted to the CO what it termed a "Formal Claim" (R4, tab 30). Included as an attachment was a letter to the CO dated December 7, 2020, requesting a time extension from December 10, 2020, to July 30, 2021, based upon an employee medical emergency, weather delays, and impact of COVID-19 (R4, tab 30 at 27130-27131). That submission, which contained no certification and set forth no sum certain, requested recission of the default termination, issuance of "a Termination for Convenience as to [the] Task Order," and recission of the COFD assessing liquidated damages – all issues already before the Board in ASBCA Nos. 63378 and 64226 (*id.* at 27120). Following receipt of that document, government counsel apparently reached out to appellant's counsel and advised that the August 1, 2025, submission was not certified (gov't mot. at 3 (January 26, 2026)).

### Complaint in ASBCA No. 64226 – Liquidated Damages

10. On August 19, 2025, JAM filed its complaint in ASBCA No. 64226, again alleging delay attributable to the government as an affirmative defense to the assessment of liquidated damages (compl. dtd. August 19, 2025, ¶¶ 3, 8, 14, 63).

### JAM Resubmission of "Formal Claim" Dated August 19, 2025

11. According to the government, on August 19, 2025, appellant's counsel emailed the government, stating that at the request of government counsel, JAM was "re-submitting the attached Claim with Certification by an official of JAM Construction." However, according to the government, no document purporting to be a claim was attached to the email. (Gov't mot. at 3 (January 26, 2026))[4] According to

---

[4] A copy of JAM's August 19, 2025, submission to the government, titled "Formal Claim and Request for Contracting Officer's Final Decision - Contract, # N69540-16-D-OO65, Task Order # N6945020F1531," is attached as Exhibit 4 to JAM's subsequently filed March 6, 2026, complaint in ASBCA No. 64439.

the government, on September 15, 2025, appellant's counsel submitted "a document purporting to be a 'Formal Claim' dated August 19, 2025," which requested the same relief as the August 1, 2025, submission (SOF ¶9), and again contained no sum certain (gov't mot. at 3-4 (January 26, 2026)).

## Submission of Additional Claim Documents

12. During a status conference on September 25, 2025, appellant's counsel agreed to provide quantification of alleged compensable government delays and corresponding cost impacts (gov't mot. at 4 (January 26, 2026)).

13. Upon reopening of the Federal Government following the October 1, 2025 to November 12, 2025, shutdown, appellant's counsel submitted to the government on November 18, 2025, a supplement to JAM's August 2025 submission consisting of 30 documents (gov't mot. at 4 (January 26, 2026; see R4, tabs 32-61)).[5] The government states that it reviewed the submission "but could not identify anything constituting a sum certain, certification, or any actionable request for relief that was not already on appeal at the Board" (id.).

## Formal Claim Supplemental Information - November 24, 2025

14. After discussions with government counsel, on November 24, 2025, appellant's counsel submitted a document, entitled "Supplemental Information Regarding Formal Claim and Request for Contracting Officer's Final Decision – Contract, # N69540-16-D-OO65, Task Order# N6945020F1531, dated August 19, 2025, and previously provided to CO" (R4, tab 31 at 27173; gov't mot. at 4 (January 26, 2026)).[6] The document states, in part:

> Since the underlying demand by JAM remains the same as in the original Certified Claim, this submission is supplemental and submitted for clarification and the original Certified Claim remains in place. At this point in time, it is virtually impossible to assign accurate monetary values to many of the various delays detailed in this

---

This document appears to be a copy of JAM's August 1, 2026, "Formal Claim," but with the addition of a CDA certification by JAM's president, appearing on page four of the document. (Compl. dtd. March 6, 2026 (ex. 4 at 4); R4, tab 30)

[5] According to the government, "[b]ecause no claim or document purporting to be a claim was attached, the Navy assumed the August 19 reference was intended to direct the Navy to the September 15, 2025 submission that had been dated August 19, 2025" (gov't mot. at 4 (January 26, 2026)).

[6] The document has a stated date of "12 November 24, 2025" (R4, tab 31 at 27173).

memorandum and the attached documents. Therefore, since the ASBCA has advised that JAM's Certified Claim should include a monetary demand for each delay, this supplement will use two different methodologies to assign a per-day value to each delay detailed [below].

(R4, tab 31 at 27173)

15. JAM's submission sets forth the following two, alternative delay calculations:

> **Delay cost calculation methodology #1:** Since the entire period of performance for the subject Task Order was 275 days and the entire contract price was $2,087,844, the per-day cost of the contract was $7,592.16. Assuming a (very conservative) profit margin for JAM of 10%, the per-day cost of excusable delays and/or delays caused [by] the US Navy can be estimated at $759 per day ($2,087,844 divided by 275 times 10%).

> **Delay cost calculation methodology #2:** JAM employed three full-time personnel during the period of performance and all periods relevant to the delays delineated below. Owner and CEO Jose Mantilla drew a salary from JAM of $240,000. Project Manager John McDonald drew a salary of $67,000; and JAM employed an office assistant at a salary of $38,400. Additionally, Mr. McDonald was not local to the job site and required housing and travel costs of $2,500 per month or $30,000 per year. Finally, JAM rented equipment at $60 per month, or $720 per year. Therefore, the total yearly cost to JAM for the site (and this does not include contractor costs and several other costs) was $376,120. The per-day costs to JAM using this method would be $1,030 per day ($376,120 divided by 365).

(*Id.* at 27173-74) (emphasis omitted)

16. The November 24, 2025 submission also sets forth numerous delay allegations and alternative cost estimates, including (1) an alleged 141 days of delays attributable to COVID-19 (January 16 to June 6, 2020) totaling at an estimated cost of between $107,019 (using methodology 1) and $145,230 (using methodology 2), (2) an alleged 323 days of delay (September 20, 2020 to August 9, 2021) and a

6

corresponding cost of between \$245,157 and \$332,690, attributable to the loss of a subcontractor caused by government delays, (3) an alleged 301 days of delay (July 27, 2021, to May 24, 2022) and a corresponding cost of between \$228,459 and \$310,030, attributable to the loss of a key employee due to alleged government mishandling of the project, (4) an alleged 100 days of delay (December 21, 2020, to March 31, 2021) and a corresponding cost of between \$75,000 and \$103,000, attributable to the loss of a foundation subcontractor and government failure to understand the test piles issue, (5) an alleged 412 days of delay (April, 7, 2021, to May 24, 2022) and a corresponding cost of between \$312,708 and \$424,360, attributable to differing site conditions, (6) an alleged 97 days of delay (April 7 to July 13, 2020) and a corresponding cost of between \$73,623 and \$99,910, for various delays in processing submittals, (7) an alleged 369 days of delay (April 7, 2020, to April 12, 2021) and a corresponding cost of between \$280,071 and \$380,070, for government mishandling of JAM's quality control plan, (8) an alleged 39 days of delay (June 4 to July 13, 2020) and 111 days of delay (June 12, to October 1, 2020) at an unspecified cost for government mishandling of pre-construction submittals, and (9) an alleged 735 days of delay (May 19, 2020, to May 24, 2022) and a corresponding cost of between \$557,865 and \$757,050 for government mishandling of concrete materials submittals.  JAM also alleges delays of an unstated number and unstated cost impact for extreme weather delays and loss of a key JAM employee due to illness.  (R4, tab 31 at 27174-81) [7]  The submission contains no CDA certification.

CO Decision Dated January 12, 2026

17.  On January 12, 2026, the CO issued a "decision" (which the CO did not assert was a CDA COFD) responding to JAM's August 19, 2025, "Purported Claim," and JAM's November 24, 2025, "Supplemental information to Purported claim" (R4, tab 62).  In rejecting the "purported claim," the CO summarized, stating "[t]he essence of the relief asked for in JAM's recent submissions are merely a regurgitation of what is already on appeal at the Board," and that JAM's submissions fail to set forth "a clear and unequivocal statement," providing adequate notice to the CO about "the basis and amount of [its] claim for time or costs of Government Delays" (*id.* at 28220).  The CO also took the opportunity to increase the demand for payment of liquidated damages to reflect the additional time from issuance of its previous liquidated damages COFD, to

---

[7] The government notes that the total number of days set forth in the various alleged delay categories results in a total of 2,479 days of delay (which equates to six years, and 288 days), yet the task order work commenced in March 2020 (less than six years ago) and was terminated for default in May 2022 (less than 4 years ago) (gov't mot. at 4 (January 26, 2026)), but this does not take into account the fact that many of the alleged delays are overlapping.  The fact that these delays overlap does not render them an improper basis upon which to find that JAM has identified in its claim to the CO alleged days of delay.

January 12, 2026, the date of the CO's "decision" - in the total amount of $1,394,250 (*id.* at 28221).

### ASBCA No. 64439 – Appeal of CO's January 12, 2026, Decision

18. On January 21, 2026, JAM appealed the CO's January 12, 2026, decision, which was docketed as ASBCA No. 64439, and requested consolidation with ASBCA Nos. 63378 and 64226, which the Board granted on January 28, 2026.

### Government's Second Motion to Dismiss – ASBCA No. 64439

19. On January 26, 2026, the government filed its motion to dismiss ASBCA No. 64439, also for failure to state a claim upon which relief can be granted. JAM submitted its response on March 6, 2026.

### Complaint in ASBCA No. 64439

20. On March 6, 2026, JAM filed its complaint in ASBCA No. 64439, which stated, in part: "[o]nly after cajoling from the Government did JAM, through counsel, attempt the virtually impossible task of quantifying monetary damages based upon delay and obstruction. It has been the Government's consistent attempts to shoehorn JAM's requested relief into a monetary Claim that have frustrated the appellate process and forced JAM's hand to re-shape its appeals." (Compl. dtd. March 6, 2026, ¶ 16) The complaint references JAM's November 24, 2025 submission, as exhibit 5, which is attached to the complaint, but does not allege entitlement to the amounts set forth in the submission, stating instead that the supplemental information was an attempt "to quantify its Claim in monetary terms," and that the "entire Claim, but especially this re-submission, was submitted for the sole purpose of placating the Government's demands, obtaining a COFD on these issues, and establishing jurisdiction for the ASBCA" (*id.* at ¶ 4). The complaint identified no sum certain and set forth no specific monetary damages (*id.*).

### DECISION

I. Burden of Proof/Standard of Review

JAM challenges the government's default termination of its contract and task order, as well as the government's assessment of liquidated damages, and requests that the Board convert the default termination to one for the convenience of the government (SOF ¶¶ 4-5, 8,10). A termination for default is a government claim for which "[t]he government bears the burden of proof in establishing the validity of a default termination." *Cascade Designs, Inc.*, ASBCA No. 62378, 22-1 BCA ¶ 38,068 at 184,843 (quoting *Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1249

8

(Fed. Cir. 2002)). Once "the government satisfies its burden of establishing the validity of the default termination, the contractor has the burden of establishing that the default was excusable," which the contractor can meet if it demonstrates that "the government materially breached the contract thereby discharging appellant's duty to perform," or that its failure to perform was well beyond its "control and without its fault or negligence or that of its subcontractors or suppliers," or that the CO's "default decision was arbitrary or capricious or an abuse of discretion." *Id.* (citations omitted).

The government's assessment of liquidated damages is likewise a government claim for which government "bears the initial burden of proving that the contractor failed to meet the contract completion date and that the period of time for which it assessed liquidated damages is correct." *Sauer Inc.*, ASBCA, No. 62395, 21-1 BCA ¶ 37,845 at 183,753 (quoting *KEMRON Envtl. Servs. Corp.*, ASBCA No. 51536, 00-1 BCA ¶ 30,664 at 151,399). Once the government has met its burden, the appellant must demonstrate "either that the government incorrectly assessed the damages under the contract, or that appellant's failure to comply with the terms of the contract was excusable." *Id.* (quoting *Chem-Care Co.*, ASBCA No. 53614, 06-2 BCA ¶ 33,427 at 165,726).

The government's motions seek partial dismissal of JAM's appeals for failure to state a claim upon which relief can be granted. Specifically, the government challenges those portions of JAM's appeals asserting government-caused delay as an affirmative defense, noting that JAM first raised the affirmative defense in its complaint filed in ASBCA No. 63378 (SOF ¶¶ 4, 6). The government's first motion to dismiss for failure to state a claim or to strike argued that because JAM failed to present to the CO a claim for a time extension, the Board lacked jurisdiction to consider that aspect of JAM's appeal (gov't mot. at 9 (April 24, 2025)). After filing that motion, the parties held discussions aimed at resolving issues raised by the government's motion and, accordingly, JAM submitted what it considered to be additional claims and supporting documentation to address the government's concerns (SOF ¶¶ 9, 11-16). The government's second motion to dismiss for failure to state a claim asserted that the additional claims and supporting documentation submitted by JAM did not resolve the government's concerns because, at bottom, they did not constitute submission to the government of a proper CDA claim (gov't mot. at 3-4, 7-8 (January 26, 2026)).

The Board considers motions to dismiss for failure to state a claim even though our rules have no equivalent to Federal Rules of Civil Procedure (FED. R. CIV. P.) 12(b)(6). *Parsons Gov't Servs., Inc.*, ASBCA No. 60663, 17-1 BCA ¶ 36,743 at 179,101 ("[f]or purposes of assessing whether an appeal before us states a claim upon which relief can be granted, the primary document setting forth the claim is not the complaint, *per se*, but the contractor's claim submitted to the contracting officer"). "Our review encompasses the complaint, matters integral to the complaint, the case

record, and the contractor's claim submitted to the contracting officer." *Samho Enter.*, ASBCA No. 63587, 25-1 BCA ¶ 38,891 at 189,304; *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) (in considering a FED. R. CIV. P. 12(b)(6) motion we "may consider judicially noticeable matters outside the pleadings without converting [the motion to] one for summary judgment); *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (considering in context of FED. R. CIV. P. 12(b)(6) a COFD attached to the complaint, an appendix attached to the government's motion, and exhibits attached to contractor's response).

As the proponent of the Board's jurisdiction, JAM "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Northrop Grumman Corp.*, ASBCA No. 62165, 21-1 BCA ¶ 37,922 at 184,170 (citations omitted). Pursuant to the CDA our jurisdiction requires both a valid claim and a COFD, or a deemed denial of the claim. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). We will "dismiss a claim if the complaint does not allege facts plausibly suggesting entitlement to relief." *Samho*, 25-1 BCA ¶ 38,891 at 189,304.

II.  FAR Definition of Claim

JAM asserts government-caused delay as an excuse for its failure to timely perform the contract task order but unequivocally states in ASBCA No. 64439 that it is neither asserting a monetary claim, nor does it seek monetary relief for the government-caused delay (app. resp. at 1-2 of 11 (March 6, 2026)). According to JAM, "[t]he allegations regarding excusable delay and Government obstruction are not a separate monetary Claims but are part and parcel of Appellant's argument against the propriety of the Termination for Cause" and that "[e]ven if JAM's assertions on this topic are considered a "Claim" under the statutory and regulatory definition, Appellant has always (prior to being driven to do so by the Government and the ASBCA) requested only non-monetary relief, namely the reversal of the Termination for Cause" (app. resp. at 6 of 11 (March 6, 2026)).

Because the CDA does not define the term "claim," we look to the FAR for a definition. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995). FAR 2.101 defines "claim" as "a written demand ... seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. Regardless of how JAM characterizes its action pending before the Board, a claim for money "that does not state a sum certain has not sufficiently pleaded the elements of a claim under the CDA and may be denied by the CO and dismissed on appeal to [the Board] for failure to state a claim." *ECC Int'l Constructors, LLC v. Sec'y of the Army*, 79 F.4th 1364, 1380 (Fed. Cir. 2023). "While the sum certain monetary claim requirement is no longer jurisdictional, the Federal Circuit has clearly indicated it is mandatory for a

10

valid claim under the FAR," and remains "necessary to give a CO adequate notice of the basis and amount of a claim." *Lift Up Trucking, LLC*, ASBCA No. 64346, 26-1 BCA ¶ 38,988 at 189,823 (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)).

According to JAM, "the Government has misapplied and misinterpreted federal statutes and the provisions of the FAR and attempted to shoehorn Appellant's allegations into something that they are not and have never been - a monetary Claim for a sum certain" (app. resp. at 2 of 11 (March 6, 2026)).  JAM likewise argues "[t]here was never a monetary aspect to these assertions until the Government cajoled Appellant to fundamentally change the nature of its appeal and assert a separate Claim. JAM does not seek monetary remuneration.  No sum certain is demanded." (*Id.* at 6-7 of 11)  Indeed, JAM asserts that the only reason it has included monetary damage type calculations in the claim(s) it submitted is to satisfy the government's jurisdictional concern expressed in its motion to dismiss (*id.* at 5 of 11).

III. A Clear and Unequivocal Statement

To satisfy the CDA's presentment requirement, "[a] claim need not be submitted in any particular form or use any particular wording, but it must provide a clear and unequivocal statement that gives the CO adequate notice of the basis and amount of the claim." *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 776 (Fed. Cir. 2021) (quoting *K-Con Bldg.*, 778 F.3d at 1005); *Contract Cleaning*, 811 F.2d at 592. Although JAM states it is its intention "to prove that Government actions made performance on the project impossible and that the Termination for Cause was inappropriate" (app. resp. at 5 of 11 (March 6, 2026)), and has presented a litany of alleged government delays and possible damage amounts in its November 24, 2025, submission, JAM has failed to include a specific sum certain for those delays and CDA certification (SOF ¶¶ 14-16).

Regarding JAM's November 24, 2025, submission, the government properly notes that "when it comes to monetary quantification, the [November 24, 2025] Narrative contains two different calculations for a per diem cost but does not specify which one the Appellant expects to be used," which "makes it impossible to calculate a cost for any compensable delay the CO might potentially identify," and "[a]s such, the Narrative fails to provide either a total quantification of allegedly compensable delay days or any specific monetary claim" (gov't mot. at 4-5 (January 26, 2026)).  As recognized recently by the Federal Circuit, a claim containing "varied calculations and open-ended amounts fall[s] short of 'a clear and unequivocal statement that gives the CO adequate notice of the basis and amount of the claim.'" *HEALTHeSTATE, LLC v. United States*, No. 2024-1336, 2026 WL 787163 at *5 (Fed. Cir. Mar. 20, 2026) (unpublished) (quoting *Contract Cleaning*, 811 F.2d at 592).

11

JAM's complaint in ASBCA No. 64439 likewise does not allege entitlement to the amounts set forth in the submission dated November 24, 2025, stating instead that the supplemental information was an attempt "to quantify its Claim in monetary terms," and that the "entire Claim, but especially this re-submission, was submitted for the sole purpose of placating the Government's demands, obtaining a [COFD] on these issues, and establishing jurisdiction for the ASBCA" (SOF ¶ 20). Indeed, JAM's complaint identifies no sum certain, admitting instead that "quantifying monetary damages based upon delay and obstruction" is "virtually impossible" (*id.*). What is certain here is that JAM has failed to present to the CO a proper, unequivocal claim in a sum certain, alleging delays attributable to the government and requesting a time extension for government actions that impacted JAM's efforts to perform the contract task order. *ECC CENTCOM Constructors, LLC*, ASBCA No. 60647, 18-1 BCA ¶ 37,133 at 180,713 ("a contractor contesting ... a default termination due to excusable delay must submit a claim for a time extension before appealing to the Board").

## IV. Adjustment of Contract Terms

As noted above, FAR 2.101 defines the term "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." Under this definition, a "sum certain" is required for claims that seek the payment of money, but is not required for nonmonetary claims, such as those seeking "the adjustment or interpretation of contract terms" or other contractual relief. JAM argues that its non-monetary challenge to the default termination and request for a convenience termination qualifies under the FAR's definition of claim because JAM seeks "other relief arising under or relating to this contract" (app. resp. at 2 of 11 (March 6, 2026)). However, what JAM actually seeks here is "the adjustment . . . of contract terms" – i.e., an extension of time for alleged government delays. 48 C.F.R. § 2.101; *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *ECC CENTCOM*, 18-1 BCA ¶ 37,133 at 180,713.

The quandary presented in these appeals is that, typically, when a contractor asserts a claim for government caused delay, the contractor includes as part of that claim a request for money damages. As discussed above, that is not the situation presented in these appeals – JAM expressly states it has no interest in recovering monetary damages for government caused delay. The question here, then, is whether a contractor seeking to assert government delay as an affirmative defense to a termination for cause, need not first submit a sum certain delay claim to the CO for a decision, if at the Board the contractor professes to seek only conversion of the default termination to a convenience termination and no monetary relief.

Our decision in *Skip Kirchdorfer, Inc.*, ASBCA No. 40515 et al., 93-3 BCA ¶ 25,899, is instructive on this issue. In that appeal (which did not concern the assertion of government caused delay as an affirmative defense to a termination for default) the contractor challenged two COFDs denying the contractor's claims for time extensions due to government caused excusable delay, neither of which demanded payment of money nor included CDA certification. As noted by the Board, the "contractor claims sought only time extensions under the respective contracts to which they related, with no mention of seeking the payment of any amount of money," and, as such, "the scope of each appeal is properly limited to the contractor's entitlement to all or part of the time extensions requested in its claims." *Id.* at 128,834. The government moved to strike prayers for relief set forth in the complaint because the claims had not been quantified and subsequently sought dismissal for lack of jurisdiction because the claims had not been certified. *Id.* at 128,833. We found that, because the contractor's time extension requests under each contract were in writing and were submitted to the CO for decision, they satisfied the prerequisites for a valid claim, holding that a claim for relief "arising under" the contract other than the payment of money is "expressly cognizable under the applicable disputes clause in each" of the contractor's contracts. *Id.* at 128,835.

As we noted more recently, when determining whether the Board has jurisdiction to consider a request for declaratory relief, "the jurisdictional question . . . is not whether the claim may have a significant monetary impact, but whether it may have a significant nonmonetary impact." *J&J Maint., Inc., d/b/a J&J Worldwide Servs.*, ASBCA No. 63013, 23-1 BCA ¶ 38,353 at 186,257 (citing *Securiforce In'l Am., LLC v. United States*, 879 F.3d 1354, 1360 (Fed. Cir. 2018), *overruled, in part, on other grounds*, *ECC Int'l Constructors,* 79 F.4th at 1372-73).

As explained by the Federal Circuit in *Securiforce*, "[w]hile contractors may in some circumstances properly seek only declaratory relief without stating a sum certain, they may not circumvent the general rule requiring a sum certain by reframing monetary claims as nonmonetary." 879 F.3d at 1360. *Securiforce* dealt with a contractor's claim challenging the government's termination of its contract for convenience, which the contractor submitted to the CO as a request for declaratory relief. *Id.* at 1358-59. Holding that the contractor's failure to present to the CO a sum certain for its breach claim "rendered its claim insufficient," the Federal Circuit explained that, if granted, the declaratory relief would "yield only one significant consequence: it would entitle Securiforce to recover money damages from the government." *Id.* at 1360-61. That is not the situation presented here. Assuming JAM is successful in establishing government caused delay as a defense to the government's termination for cause, such a result would have a significant nonmonetary impact, i.e., overturning the termination of the contract for default. *J&J Maint., Inc*, 23-1 BCA ¶ 38,353 at 186,257 (finding "significant consequences" other than the recovery of money such that claims not barred by the Federal Circuit decision

in *Securiforce*). Accordingly, we conclude that appellant has failed to state a claim for government caused delay monetary damages, but we may consider JAM's non-monetary claim of alleged government caused delay, asserted as an excuse to its termination for cause – the claim that JAM unequivocally states it seeks to assert as an affirmative defense in these appeals.

## V. CDA Certification

We note that JAM also argues that its November 24, 2025, filing "did not require any additional certification as it was not a separate claim but a provision of supplemental information for the Contracting Officer's consideration" (app. resp. at 3 of 11 (March 6, 2026)). JAM's November 24, 2025, filing included a considerable amount of additional information that is not properly characterized as just an update to information already provided to the government (SOF ¶¶ 14-16); *see, e.g.*, *Tom Shaw, Inc.*, ASBCA No. 28596 *et al.*, 95-1 BCA ¶ 27,457 at 136,774, *aff'd on reconsid.*, 96-1 BCA ¶ 28,007 ("appellant's claim revisions constituted an attempt at accuracy, with dollars claimed for specific items both increasing and decreasing. At all times, the underlying claim allegations remained the same and the cost modifications did not constitute new claims requiring additional certification").

JAM readily admits that, when it submitted its certification as part of its August 19, 2025, submission, its "claim" was "non-monetary," containing no discussion of alleged delay damages (app. resp. at 10 of 11 (March 6, 2026)) ("[n]o certification was required on that non-monetary Claim, but one was provided anyway"). Even if JAM's monetary government delay claim was somehow otherwise considered proper and in compliance with the CDA and the FAR, lack of certification would be yet one more reason why the Board would be unable to entertain the monetary portion of JAM's delay claim. *Tefirom Insaat Enerji Sanayi ve Ticaret A.S.*, ASBCA No. 56667, 11-1 BCA ¶ 34,628 at 170,630 (while defect in certification can be cured during appeal, complete lack of certification deprives Board of jurisdiction).

## CONCLUSION

For these reasons, we deny the government's motion in ASBCA 63378, to strike JAM's assertion of alleged government-caused delay as an excuse or affirmative defense to the government's default termination and the government's assessment of liquidated damages in ASBCA No. 64226. We grant the government's motion to dismiss in ASBCA Nos. 63378 and 64439 for failure to state a claim upon which relief can be granted JAM's monetary claim based upon alleged government caused delay.

Dated: June 2, 2026

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63378, 64226, 64439, Appeals of J.A.M. Construction Services, Inc., rendered in conformance with the Board's Charter.

Dated: June 2, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals